IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

REEDSBURG UTILITY COMMISSION,                              OPINION and ORDER

                       Appellant,                              10-cv-84-bbc

       v.

GREDE FOUNDRIES, INC.,

                       Appellee.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

On June 30, 2009, appellee Grede Foundries, Inc. filed a chapter 11 bankruptcy petition in this district, initiating an automatic stay pursuant to 11 U.S.C. § 362 that halted "any act to create, perfect, or enforce any lien" against Grede and "any act to collect, assess, or recover a claim."  11 U.S.C. § 362(a)(4), (6).  On December 21, 2009, the bankruptcy court ruled that appellant Reedsburg Utility Commission, a creditor of Grede, had violated the 11 U.S.C. § 362 automatic stay by sending notice of Grede's unpaid utility bills to Grede and the City of Reedsburg.  The Commission appeals that order, contending that it did not violate the automatic stay because multiple exceptions to the automatic stay apply in this case.  In response, Grede contends that the Commission's appeal is moot, and even if it is not moot, the Commission violated the stay.

1

This court has jurisdiction over this appeal under 28 U.S.C. § 158(a).  The bankruptcy court entered an order that the Commission violated the automatic stay, terminating the dispute over the Commission's status as a secured creditor.  This is a final order for purposes of § 158(a).  In re Smith, 582 F.3d 767, 776 (7th Cir. 2009) ("An order of the bankruptcy court may be considered final, and thus immediately appealable, when it definitively resolves a discrete dispute within the larger case."); In re Ross-Tousey, 549 F.3d 1148, 1152 (7th Cir. 2008) ("[A]n adjudication by the bankruptcy court is definitive because it cannot be affected by the resolution of any other issue in the proceeding, and therefore no purpose would be served by postponing the appeal to the proceeding's conclusion.") (internal quotations omitted).

Because I agree with the bankruptcy court that the Commission attempted to create or perfect a lien after Grede filed the bankruptcy petition and that no exceptions take this case outside the application of the automatic stay, I am affirming the bankruptcy court's decision.

The following summary of relevant facts and proceedings is drawn from the record of the proceedings before the bankruptcy court.  (All citations in the background section are to the bankruptcy court's docket, In re: Grede Foundries, Inc., 09-14337-rdm.)

2

BACKGROUND

A.  <u>Facts before the Bankruptcy Court</u>

Appellee Grede Foundries operates foundries in six states and supplies metal parts to the automotive industry.  Grede owns properties in Reedsburg, Wisconsin, that receive utility service from appellant Reedsburg Utility Commission.  The Commission is a municipal utility that provides electric, water, telephone, internet and cable television services to residential and business customers in Reedsburg and surrounding areas.  Grede is the Commission's single largest electric utility customer.  In 2008, approximately 35% of the Commission's revenues stemmed from its billings to Grede.

On June 30, 2009, Grede filed a chapter 11 bankruptcy petition in this district.  At the time, its pre-petition obligations to the Commission for unpaid utility charges were a little more than $1.3 million.  Most of those charges were incurred for electricity; a small portion was attributable to water bills, storm water charges and sewer charges.  On October 15, 2009, the Commission's general manager sent 19 written notices to Grede and its attorneys regarding the unpaid utilities.  Each notice corresponded to a separate account Grede maintained with the Commission.  The notices provided in part:

> Our records indicate a current balance in the amount of [$ . . . ] for the account of Grede Foundry . . . .
>
> As provided for in sections 66.0809 and 66.0627 of the Wisconsin Statutes and Reedsburg City Ordinance No. 1083 Section 3.08, unpaid electric, water

3

and sewer bills become a lien against the property if they remain uncollected after October 30, 2009.

* * *

We are aware that Grede Foundry is a debtor in a currently pending Chapter 11 bankruptcy proceeding . . . This letter constitutes notice of the Reedsburg Utility Commission's right under municipal ordinance and state law to place amounts due on this account on the property tax roll. This notice does not constitute filing of a lien. This notice is provided pursuant to and in compliance with 11 U.S.C. § 362(b)(3) and 546(b)(1)(A).

Dkt. #605, Ex. A.

Usually, to collect delinquent utility charges, the Commission reports a delinquent account to the City of Reedsburg, and the city remits payment to the Commission from the city's general fund. After paying the Commission for the delinquent account, the city typically reports the delinquency to the Sauk County treasurer for inclusion on the property tax bills sent out by the county. Late in November or early December, the city calculates and reports its mill rate to the Sauk County treasurer. Once the mill rate has been reported, the county prints and mails the property tax bills to customers during the first two weeks in December.

Such unpaid utility bills are placed on the property tax bills as a "special charge." The property tax, including any special charge, is due on January 31 under state law, unless the property owner elects to pay in two equal installments, in which case the second half is due July 31. Up to January 31, the city accepts payment for the property tax bill. After January

4

31, the county pays the city for any unpaid property taxes, including special charges, and assumes responsibility for collecting the unpaid amounts from taxpayers. If an arrearage remains on the property tax bill after the bill's due date, the county will send notice of the delinquency to the property owner, after which the amount in arrears is placed as a lien by the county upon the real estate pursuant to the county's usual procedures for placing such liens.

On November 3, 2009, the Commission reported Grede's delinquent utility charges to the clerk for the City of Reedsburg, along with the delinquent charges of all of the Commission's customers.  The city reported the arrearage for Grede to the county on November 12, 2009.  However, because the unpaid amount was so high, the city did not reimburse the Commission.

On November 5, 2009, Grede filed a motion to enforce the automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362(a), which creates a statutory injunction against debt collection efforts outside of the bankruptcy proceedings.  Grede sought to void the Commission's actions and thereby prevent the delinquencies from becoming a lien on Grede's properties.  Grede also sought to hold the Commission in contempt and requested an expedited hearing on the matter. Dkt. #604.  The Commission responded that its notice of unpaid utility charges did not violate the automatic stay because they fit within at least one exception to the automatic stay provision.  Dkt. #633.

5

At a November 12, 2009 hearing on Grede's motion, the bankruptcy court held that the Commission was not in contempt for violating the stay. Dkt. #1055. The court denied Grede's motion to hear the motion for stay of the enforcement on an expedited basis, but ordered the Commission not to take any steps to cause the delinquent charges to attach as a lien on Grede's property until the merits of the motion were decided. To comply with this order, the Commission instructed the City of Reedsburg and the county that Grede's unpaid utility charges should be omitted from its 2009 property tax bill.

The Commission then commenced an adversary proceeding on November 23, 2009, seeking declarations that (1) it had not violated the automatic stay and (2) Grede would not be able to avoid a tax lien for unpaid utility charges. Reedsburg Utility Commission v. Grede Foundries, Inc., Adversary Proceeding No. 09-327-rdm. On December 7, 2009, the Commission sought partial summary judgment as to its compliance with its obligations under 11 U.S.C. § 362.

## B.  Ruling of the Bankruptcy Court

In an order dated December 21, 2009, Judge Martin held that the Commission had violated the automatic stay provision of 11 U.S.C. § 362 by sending delinquency notices to Grede and by reporting the delinquencies to the city clerk. Dkt. #1152. The court ordered that the Commission's "action to perfect a lien against Grede's properties are voided . . . ."

Id.

In reaching its conclusion, the court held that the Commission's actions constituted efforts to create or perfect a lien or collect a debt within the meaning of 11 U.S.C. § 362, and that none of the exceptions in § 362(b) applied to take the Commission's actions outside the automatic stay.

After the court issued its ruling, the Commission dismissed its adversary proceeding without prejudice and filed this appeal. At no time has the Commission applied for relief from the automatic stay. At no point has Grede paid off its overdue balances.

## C.  Sale of Grede's Assets

Concurrently with the proceedings in which Grede sought enforcement of the automatic stay against the Commission, on November 4, 2009, Grede filed a motion for an order authorizing the sale of substantially all of its assets free and clear of liens, claims, encumbrances and interests, approving certain sale procedures and approving a proposed asset purchase agreement.

The Commission objected to the sale on December 16, 2009. Dkt. #1139. However, following the bankruptcy court's December 21, 2009 order in which Judge Martin concluded that the Commission had violated the automatic stay provision, the Commission withdrew its objection to the sale of Grede's assets. Dkt. #1156. No objections to the sale remained.

At a December 22, 2009 hearing on the sale of Grede's assets, the bankruptcy court approved the sale and allowed Grede to transfer substantially all of its assets, including the Reedsburg facility, free and clear of any liens or other encumbrances to a purchaser.  The transfer occurred on February 5, 2010.  Dkt. #1177.

OPINION

When a district court reviews a bankruptcy court order, the district court applies a "clearly erroneous" standard to questions of fact, Fed. R. Bankr. P. 8013, and reviews questions of law and the application of law to fact *de novo*.  Mungo v. Taylor, 355 F.3d 969, 974 (7th Cir. 2004).  In this case, the facts are not in dispute, so I am applying a *de novo* standard of review to the bankruptcy court's order.

A.  Mootness

As an initial matter, Grede contends that the Commission's appeal is moot because the property against which the Commission asserts its interest was sold "free and clear" of all liens, claims, encumbrances and interests pursuant to the bankruptcy court's December 22, 2009 sale order.  Thus, Grede contends, even if this court were to reverse the bankruptcy court's decision that the Commission violated the automatic stay, any interest that the Commission may have had in Grede's property has been extinguished by the sale.  Also,

8

Grede contends that because the Commission withdrew its objection to the sale of Grede's assets, the Commission consented to the sale and cannot now object to it.

This argument has no merit. Although Grede's assets have been sold, the Commission has an interest in the distribution of the sale *proceeds*. The Commission contends that if it had been allowed to secure a lien against Grede in the amount of the unpaid utilities, as it would have but for the bankruptcy court's conclusion that it had violated the stay, it would be a secured creditor with priority over other creditors. Thus, this appeal presents a live issue: Did the bankruptcy court err in voiding the Commission's efforts to perfect a lien against Grede's property, thereby leaving the Commission with a general, unsecured claim?

Further, the fact that the Commission withdrew its objections to the sale does not mean that the Commission conceded that it has no interest in Grede's property. It means only that any interest the Commission has in the property attaches to the proceeds of the sale, rather than the property itself. In approving the sale of Grede's assets, the bankruptcy court concluded that creditors with claims against Grede were adequately protected by the sale because their interests "attach to the proceeds" of the sale "in the same order of priority and with the same validity, force and effect that such Claim holder had prior" to the sale. Dkt. #1177, at ¶ T. The Commission does not dispute the validity of the sale and is not requesting that the court set aside the sale. As the Court of Appeals for the Seventh Circuit

9

recognized in <u>In re Sax</u>, 796 F.2d 994, 998 (7th Cir. 1986), a claim to the proceeds of a § 363 sale is a distinct issue from a challenge to the § 363 sale itself.  A claim regarding the validity of the sale may be moot under § 363(m), which provides that "[t]he reversal or modification on appeal . . . of a sale or lease of property does not affect the validity of a sale or lease . . . to an entity that purchased or leased such property in good faith. . . ."  However, the Commission's interest in the *proceeds* of the sale remains a live issue.


### B.  <u>11 U.S.C. § 362 Automatic Stay</u>

The automatic stay provision, 11 U.S.C. § 362(a), is one of the "fundamental" protections afforded to debtors by the bankruptcy laws.  <u>Midlantic National Bank v. New Jersey Department of Environmental Protection</u>, 474 U.S. 494, 503 (1986).  It gives debtors breathing room by stopping collection efforts and permitting their resumption only when the stay is lifted by the bankruptcy court or dissolved by operation of law.  To accomplish this, the automatic stay provisions provide that the filing of a bankruptcy petition halts "any act to create, perfect, or enforce any lien against property of the estate" and "any act to collect, assess, or recover a claim against the debtor . . . ."  11 U.S.C. § 362(a)(4), (6).  The automatic stay has a broad scope, but it is not absolute.  Congress created certain exceptions to the automatic stay in § 362(b), though these exceptions should be interpreted narrowly.  <u>Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n</u>, 997 F.2d 581, 589 (9th Cir. 1993) (citing

In re Stringer, 847 F.2d 549, 552 (9th Cir. 1988)); see also In re Parr Meadows Racing Ass'n, Inc., 880 F.2d 1540, 1547 (2d Cir. 1989) ("Statutory exceptions to the automatic stay are to be interpreted narrowly. . . .").

Before the bankruptcy court, the Commission contended that sending the notice of delinquency to Grede and the city did not constitute an act to perfect a lien or recover a claim within the meaning of 11 U.S.C. § 362(a)(4) and (6) because the Commission was simply sending notice of unpaid utility bills as it was required to do by state statute. Dkt. #633, at 5. The bankruptcy court rejected this reasoning, concluding that the Commission's acts were taken for no other reason than to "convert its unpaid bills into a lien against Grede's properties" and "warn[] Grede that its unpaid bills would become a lien if not paid . . . ." Dkt. #1152, at 4. The bankruptcy court held that such actions are barred by 11 U.S.C. § 362(a). Id. (citing In re Radcliffe, 563 F.3d 627, 630 (7th Cir. 2009) (automatic stay bars "threats of immediate action" by creditors)).

On appeal, the Commission has not pursued the argument that its actions were not acts to perfect or create a lien. Instead, the Commission contends that its actions fall under one or more exceptions in 11 U.S.C. § 362(b) that allow a creditor to act without violating the stay. Specifically, the Commission contends that it was entitled under 11 U.S.C. §§ 362(b)(3), (b)(9) and (b)(18) to send delinquency notices and report unpaid bills to the City of Reedsburg.

11

1.  <u>11 U.S.C. § 362(b)(3)</u>

11 U.S.C. § 362(b)(3) provides that the automatic stay does not halt

> any act to perfect, or to maintain or continue the perfection of, an interest in property to the extent that the [bankruptcy] trustee's rights and powers are subject to such perfection under section 546(b) of [the Bankruptcy Code]. . . .

The companion statute, § 546(b)(1)(A), limits a debtor's power to avoid statutory liens by providing that the debtor is

> subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection.

Thus, sections 362(b)(3) and 546(b)(1)(A), read together, establish an exception to the automatic stay allowing a creditor that has a pre-petition interest in the debtor's property to perfect its interest under state law within a given time.  The purpose of the § 362(b)(3) exception to the automatic stay is to "protect, in spite of the surprise intervention of the bankruptcy petition, those whom State law protects by allowing them to perfect an interest they obtained before the bankruptcy proceedings began."  <u>Parr Meadows</u>, 880 F.2d at 1546 (superseded in part by enactment of 11 U.S.C. § 362(b)(18)) (citing H.R. Rep. No. 95-595, at 371 (1977), <u>reprinted in</u> 1978 U.S.C.C.A.N. 5963, 6327).

The § 362(b)(3) exception is dependent on the particular state statute authorizing perfection in a given case.  In this case, the relevant statute is Wis. Stat. § 66.0809(3), which

establishes the procedure by which a municipal utility provider notifies the city treasurer of utility delinquencies and the city initiates collection proceedings that may eventually result in a lien on the delinquent customer's property.  For the § 362(b)(3) exception to apply, the Commission must show that it performed an "act to perfect" (1) a pre-petition "interest in [Grede's] property," and that (2) Wis. Stat. § 66.0809 allows perfection of that interest to be effective against previously-acquired rights in the property.  11 U.S.C. § 546(b)(1)(A); In re 229 Main Street Ltd. Partnership, 262 F.3d 1, 4 (1st Cir. 2001)

a.  Pre-petition interest

The threshold question is whether the Commission had a pre-petition "interest" in the property within the meaning of § 362(b)(3) and § 546(b)(1)(A).  An interest in property within the meaning of these sections means an interest, defined by a generally applicable law, that can be perfected into a lien or other secure interest.  11 U.S.C. § 546(b)(1)(A).  Some courts have equated "interest in property" with "lien," and require a creditor seeking to invoke § 362(b)(3) to show that it had a pre-petition lien.  E.g., Equibank, N.A. v. Wheeling-Pittsburgh Steel Corp., 884 F.2d 80, 85 (3d Cir. 1989) (equating "interest in property" with "lien" in context of real property taxes); In re United States Leather, Inc., 271 B.R. 306, 308 (Bankr. E.D. Wis. 2001) ("The lien must be in existence before the petition is filed and perfected thereafter . . . .").

13

Other courts have concluded that the term "interest in property" is not synonymous with the term "lien," and apply § 362(b)(3) to situations in which a creditor has a pre-petition interest that will become a lien post-petition.  E.g., <u>In re 229 Main Street</u>, 262 F.3d at 5 ("[T]he term "interest in property" is not synonymous with the term "lien."); <u>Parr Meadows</u>, 880 F.2d at 1548 (finding that state's interest in property dated from assessment of real property taxes rather than from recordation of tax lien);  <u>In re Aznoe Agribiz, Inc.</u>, 416 B.R. 755, 765-66 (Bankr. D. Mont. 2009) (finding that interest in property arose when creditor provided pre-petition services necessary to create lien); <u>In re Jones & Lamson Machine Co.</u>, 113 B.R. 124, 129 (Bankr. D. Conn. 1990) (same).

The Commission urges the court to adopt the reasoning provided by those courts that have concluded that a creditor does not need an actual "lien" to have an interest in a debtor's property.  The Commission contends that it had an "interest" in Grede's property from the time it provided utility services to Grede and billed Grede for them.  Grede disagrees, contending that the earliest point at which the Commission could have had an interest in Grede's property was November 16, 2009, the date that the unpaid charges might have become a lien.  The bankruptcy court agreed with Grede, concluding that the Commission would not have an interest in Grede's property until the unpaid utility charges were entered on the tax roll.

The bankruptcy court cited <u>In re Leather</u>, 271 B.R 306, a case in which a chapter 11

14

debtor sought to avoid a lien on real estate arising from an unpaid water and sewer bill.  Id. at 307.  The city contended that under Wis. Stat. §§ 92.69(f), 66.0717 and 66.0809(2) (predecessor statutes to Wis. Stat. § 66.0809), the pre-petition charges were a lien upon the debtor's property at the time the services were incurred.  Id.  The issue in In re Leather was "whether Wisconsin law provides that delinquent water use charges that were not yet on the tax rolls as of the date of filing constitute an interest in property that is not subject to the debtor-in-possession's avoiding powers" under 11 U.S.C. § 546(b).  Id. at 308.  The court concluded that because the unpaid water charges did not become a lien until November, after the debtor filed for bankruptcy, the debtor could avoid the creditor's claim.  See also In re Delafuente, 2005 WL 3628861, *2-3 (Bankr. W.D. Wis. Oct. 17, 2005) (holding that municipal water utility company had no interest in debtor's land until charges were entered on tax roll and that intervening statutory revisions did not change effect of Wis. Stat. § 66.0809).

The present version of Wis. Stat. § 66.0809(3) is similar to its predecessors in providing that on October 15 each year, municipal utility providers shall give notice to each owner or occupant of a property that has not paid for utility services received in the previous year.  The notice "shall state the amount of arrears, including any penalty assessed pursuant to the rules of the utility," and shall inform the owner in arrears

that unless the amount is paid by November 1 a penalty of 10 percent of the

15

amount of arrears will be added; and that unless the arrears, with any added penalty, are paid by November 15, the arrears and penalty will be levied as a tax against the lot or parcel of real estate to which utility service was furnished and for which payment is delinquent.

The utility provider also notifies the city treasurer of unpaid charges. On November 16, if the utility arrears are not paid,

[e]ach delinquent amount, including the penalty, becomes a lien upon the lot or parcel of real estate to which the utility service was furnished and payment for which is delinquent, and the clerk shall insert the delinquent amount and penalty as a tax against the lot or parcel of real estate.

(Emphasis added).

The Commission contends that this provision makes it clear that but for Grede's unexpected bankruptcy petition, the unpaid utility charges would have matured into a perfected tax lien sometime after November 15 in the amount of any unpaid utility charges. The Commission contends that this "is enough of an interest in Grede's property" to satisfy the first requirement of the (b)(3) exception to the automatic stay. Appellant's Br., dkt. #3, at 10. Grede responds that the provision establishes that the earliest the Commission could have an interest in Grede's property is November 16 because that is when the lien attaches.

I agree with Grede. Even if I accept the Commission's contention that an actual lien or secured interest is not required to satisfy § 362(b)(3)'s "interest in property" requirement, any future interest that the Commission may have developed in Grede's property was too speculative at the time Grede filed its bankruptcy petition. Although Grede was indebted

16

to the Commission for unpaid utility before it filed for bankruptcy, the mere fact that Grede owed a debt to the Commission does not give the Commission an *interest in Grede's real property* under the Bankruptcy Code. Otherwise, every creditor would have an interest in a debtor's real property. Under § 66.0809(3), at the time Grede filed for bankruptcy on June 30, 2009, it still had more than two months within which it could have paid its utility bills and avoided the Commission's delinquency notices. Payment would have negated the necessity of any collection procedures set out in Wis. Stat. § 66.0809, including a listing on the tax roll or a lien. Even after the Commission filed its delinquency notices on October 15, Grede had until November 1 to pay the charges, and until November 15 to pay the charges plus a penalty. Only if the amount owed was not paid by November 15 would it be assessed as a "tax" and operate as a lien against Grede's property. Therefore, despite the Commission's contrary arguments, it is not a forgone conclusion that a lien will be perfected against a utility customer's property if the customer fails to pay its utility bills.

The cases that the Commission cites do not hold otherwise. <u>In re 229 Main Street</u>, 262 F.3d at 5, stands for the proposition that "interest in property" is not synonymous with a lien and that a creditor can have an interest within the meaning of § 362(b)(3) even if a lien does not actually exist before the petition date. However, as I stated above, even if the § 362(b)(3) exception does not require a lien, the Commission did not have an "interest" in Grede's real property because at the time, its rights to a lien remained speculative. In

17

contrast, in <u>In re 229 Main Street</u>, the creditor had a "present right to record a lien" on the debtor's property pre-petition because it had already spent money on cleaning up environmental damage to the debtor's property.  <u>Id.</u> at 7.  In addition, the creditor had "set [the lien] process in motion" by notifying the debtor of its intent to record a lien and had "tenaicous[ly]" pursued the lien though all possible administrative channels.  <u>Id.</u>

The Commission also cites a Seventh Circuit case, <u>In re AR Accessories Group, Inc.</u>, 345 F.3d 454, 456-58 (7th Cir. 2003), in support of its analysis.  In <u>AR Accessories</u>, the court of appeals held that the Wisconsin Department of Workforce Development did not violate the automatic stay by filing a petition claiming a wage lien three months after the debtor filed its bankruptcy petition.  <u>Id.</u>  The court of appeals held that the department had a pre-petition interest in the debtor's property beginning when the debtor's employees performed the last unpaid services, even though the statute provided expressly that the lien did not take effect until the department filed the lien petition.  <u>Id.</u> at 458-59 & n. 4.  The Commission contends that <u>AR Accessories</u> supports its argument that its pre-petition interest began when it provided unpaid utility services to Grede.   However, in <u>AR Accessories</u>, the applicable wage lien statute provided that

> The [D]epartment . . . *shall have a lien* upon all property of the employer, real or personal, located in this state for the full amount of any wage claim or wage deficiency.  A lien under this subsection takes effect when the [D]epartment . . . file[s] a verified petition claiming the lien with the clerk of the circuit court . . . .

Wis. Stat. § 109.09(2) (emphasis added).  As the court of appeals explained, the statute itself provides that the Department has a wage lien interest as soon as the employee provides services to the employer.  <u>AR Accessories</u>, 345 F.3d at 459, n. 4 ("Once an employee provides services to an employer, he is entitled to wages in return.  The wage lien is thus a mechanism for the Department's enforcement of a preexisting right on behalf of the employee.").  <u>See also</u> <u>In re Jones & Lamson Machine Co.</u>, 113 B.R. at 129 (finding that interest in property arose when employees performed services for debtor rather than when lien was created, because Indiana law provides that a "mechanic's lien vests at and relates back to the *time the work is performed*") (emphasis added).  In contrast, § 66.0809 provides multiple opportunities for utility customers to submit payment before any property interest is created on behalf of the utility provider, the city or the county, and allows a lien only after November 15.

Finally, the Commission cites <u>Parr Meadows</u>, 880 F.2d 1540, for the proposition that an "interest" for the purposes of § 362(b)(3) arises as soon as the creditor sets in motion the process that will culminate in a perfected lien.  In <u>Parr Meadows</u>, the creditor county created a tax lien on the debtor's property more than five months after the debtor filed for bankruptcy.  <u>Id.</u> at 1543.  The Court of Appeals for the Second Circuit held that the debtor could not avoid the county's lien because the creditor county had an interest in the debtor's

19

property from the time it first assessed the property, two weeks before the debtor filed its bankruptcy petition.  Id. at 1546-47.  The court explained that the county's interest arose when it "determined that the property was taxable."  Id. at 1547.  This is because, if property is taxable under the statutory scheme for Suffolk County, taxes will become due on December 1 and a lien will attach automatically.  Id. at 1548 ("All assessment of property occurs as of [the tax assessment date], and from that time forward, the county has a real and identifiable interest in the property *which cannot be erased or altered by subsequent events*.") (Emphasis added).

The Suffolk County property tax scheme is very different from the collection of utility bills under Wisconsin law.  Under Wis. Stat. § 66.0809, the county does not determine that the debtor's property is "taxable" and should be assessed with a "tax" until after November 15.  Unlike the property tax scheme in Parr Meadows, subsequent events *can* alter or change the Commission's interest in Grede's property, up until November 15.  Utility customers are provided delinquency notices in October, have a month within which they can remit payment and not until November 15 does the county determine a customer's utility arrears and the amount that should be placed on the tax rolls.  At no time before November 15 can the creditor or county determine whether a tax will be due or a lien will attach, because the utility customer could pay its bill at any time.  Unlike the property tax scheme at issue in Parr Meadows, no automatic lien exists under Wis. Stat. § 66.0809.  Thus, even under the

20

standard provided in <u>Parr Meadows</u>, an interest in Grede's property did not arise until November 15 at the earliest.

b.  Effectiveness over previously acquired rights

Even if the Commission did have a pre-petition interest in Grede's property within the meaning of sections 362(b)(3) and 546(b)(1)(A), the Commission could not satisfy the second requirement necessary to invoke the § 362(b)(3) exception because it cannot show that Wis. Stat. § 66.0809, or any other Wisconsin statutory provision allows a perfected utility lien to be effective against previously acquired rights in the property.

There are two common ways in which a statute may provide that an "interest in property" is "effective against an entity that acquires rights in such property before the date of perfection." 11 U.S.C. § 546(b)(1)(A). First, a statute may provide that a lien is effective retroactively on a date prior to the date of perfection. For example, Wisconsin law provides that retroactive perfection exists for liens arising from real estate taxes. Under Wis. Stat. § 70.01, when real estate taxes are levied, "such taxes are a lien upon the property against which they are charged. *That lien is superior to all other liens . . . and is effective as of January 1 in the year when the taxes are levied*." (Emphasis added). Second, a statute may provide that when a certain perfected interest takes effect, it has priority over other property interests acquired pre-perfection. As seen above, Wis. Stat. § 70.01 grants liens arising from real

21

estate taxes priority over *"all other liens."*   Another example of a statute that grants explicit priority to a lien is the statute creating the wage liens discussed by the Court of Appeals for the Seventh Circuit in <u>AR Accessories</u>, 345 F.3d at 458.   That statute, Wis. Stat. § 109.09, provides that "[t]he [wage] lien shall take precedence over all other debts, judgments, decrees, liens or mortgages against the employer," subject to certain enumerated exceptions. The Court of Appeals for the Seventh Circuit held that such language created a lien having "superpriority" over the interests of other creditors and thus fell within the exception to the automatic stay provision.   <u>Id.</u>

The Commission cannot show that a lien for delinquent utility charges is retroactive or that it takes priority over other creditors' rights.   Unpaid municipal utility charges may become liens on November 16.   Wis. Stat. § 66.0809(3).   Unlike the statute discussing retroactivity for real estate tax liens, § 66.0809 does not provide that the utility lien is effective retroactively or that the lien takes priority over previously-perfected-interests.   As the bankruptcy court noted, § 66.0809 "is silent on retroactivity."   Dkt. #1152, at 5.

The Commission contends that delinquent utility charges should be treated as real estate taxes.   It points to the language in Wis. Stat. § 66.0809(3) providing that

> [a]ll proceedings in relation to the collection of general property taxes and to the return and sale of property for delinquent taxes apply to the tax if it is not paid within the time required by law for payment of taxes upon real estate.

The Commission argues this language shows that the legislature intended to treat liens

arising from delinquent utility charges in the same manner as liens arising from real estate taxes, making them retroactive to an effective date of January 1.  This argument is not persuasive.  Wis. Stat. § 66.0809(3) states only that general property tax "*proceedings*" apply to delinquent utility charges.  It says nothing about the character of delinquent utility charges or utility liens.  It does not say that the effective date of a utility lien is January 1.  Rather, the statute says only that the lien is effective on November 16.  Thus, I am not persuaded that utility liens have retroactive effect.

Next, the Commission contends that Wisconsin law gives high priority to delinquent utility charges, thus allowing a utility lien to be perfected and effective against previously acquired rights in the property as required by 11 U.S.C. § 546(b)(1)(A).  In support of this argument, the Commission points to Wis. Stat. § 74.11(12), which sets out the priority status of each type of tax or charge that is collected according to real estate tax collection procedures.  Under Wis. Stat. § 74.11(12):

> [I]f a taxation district treasurer or county treasurer receives a payment from a taxpayer which is not sufficient to pay all amounts due, the treasurer shall apply the payment to the amounts due, including interest and penalties, in the following order:
>
> 1g. Personal property taxes.
> 1m. Delinquent utility charges.
> 1r. Special charges.
> 2. Special assessments.
> 3. Special taxes.
> 4. Real property taxes.

23

The Commission contends that because Wisconsin law gives delinquent utility charges priority over all types of taxes except personal property taxes, delinquent utility charges are effective against other entities with rights in Grede's property, including bona fide purchasers.  As an initial matter, it is unclear why having priority over certain types of taxes translates into having an interest that defeats the rights of a bona fide purchaser.  In <u>In re Globe Building Materials, Inc.</u>, 463 F.3d 631, 634-35 (7th Cir. 2006), the Court of Appeals for the Seventh Circuit concluded that wage liens are not effective against a bona fide purchaser even though Wis. Stat. § 109.09 gave the wage lien priority over "all other debts, judgments, decrees, liens or mortgages . . . ."  The court of appeals held that because "bona fide purchaser" was "conspicuously absent from [the] list," the lien did not defeat the rights of such a purchaser.  <u>Id.</u>

Wis. Stat. § 74.11(12) does not contains the specific superpriority langage that Wis. Stat. § 109.09 includes.  Instead, § 74.11(12) is a statute that instructs municipal and county treasurers how to proceed when payments received by taxpayers are insufficient to pay all amounts due.  Section 74.11(12) merely sets out the order in which municipal taxes and charges should be satisfied, after such charges have been placed on the tax rolls.  Although the statute instructs treasurers to pay delinquent utility charges first, it is silent as to *liens or lien priority*.  Thus, § 74.11(12) provides no basis for concluding that a lien arising from delinquent utility charges defeats the rights of any other entity with interest in the

24

indebted property, especially not the rights of a bona fide purchaser.

In sum, the Commission cannot show that it had an interest in Grede's property preceding Grede's bankruptcy filing or that Wisconsin law provides it with a right to perfect its interest and take priority over interests that are perfected earlier. Therefore, the Commission's actions do not fall under the § 362(b)(3) exception to the automatic stay.

2. 11 U.S.C. § 362(b)(9)

The Commission invokes a second exception for tax-related notices under 11 U.S.C. § 362(b)(9). Under this provision, the filing of a bankruptcy petition does not stay government action to

> (A) an audit by a governmental unit to determine tax liability;
> (B) the issuance to the debtor by a governmental unit of a notice of tax deficiency;
>
> \* \* \*
>
> (D) the making of an assessment for any tax and issuance of a notice and demand for payment of such an assessment (but any tax lien that would otherwise attach to property of the estate by reason of such an assessment shall not take effect unless such tax is a debt of the debtor that will not be discharged in the case and such property or its proceeds are transferred out of the estate to, or otherwise revested in, the debtor).

11 U.S.C. § 362(b)(9). Under this provision, a government entity may determine the amount of tax due and send a bill notifying the taxpayer of the amount due without violating the automatic stay. E.g., Four Rivers Investments, Inc. v. United States, 77 Fed. Cl. 592,

25

600-601 (Fed. Cl. 2007); <u>see also</u> <u>In re Wood</u>, 328 B.R. 880, 888-89 (Bankr. S.D. Fla. 2005).  The Commission contends that its delinquency notice was a permissible notice of a tax deficiency or a notice and demand for a tax assessment.  The bankruptcy court rejected this argument, holding that the Commission's reliance on § 362(b)(9) was "misplaced."  Dkt. #1152 at 7.  I agree.  The Commission's notice of delinquency and report to the city treasurer does not fall under any of the provisions of § 362(b)(9).  Sending a notice is not an "audit" under § 362(b)(9)(A), and the Commission has not argued that it would qualify as one.  Also, the Commission's notice is not a "notice of tax deficiency" under § 362(b)(9)(B).  As explained above, under Wisconsin law, unpaid utility bills do not become a "tax" until after November 15.  Wis. Stat. § 66.0809.  Therefore, the Commission's delinquency notice could not qualify as "notice of tax deficiency" because, as the bankruptcy court noted, "no tax had yet been levied."  Dkt. #1152, at 7.  The closest fit under § 362(b)(9) is the "making of an assessment for any tax" or "issuance of a notice and demand for payment of such an assessment" under § 362(b)(9)(D), because the Commission's notice was a preliminary step in the county's assessing a "tax" on Grede.  However, the language of § 362(b)(9)(D) does not encompass preliminary steps taken by non-taxing entities.  The Commission has cited no cases that hold otherwise and it cites only two cases in support of its argument.  The first, <u>In re Innovation Instruments, Inc.</u>, 228 B.R. 313, 315 (Bankr. N.D. Fla. 1998), involved post-petition tax and penalty assessments by the Internal Revenue

26

Service and the second, H & H Beverage Distributors v. Dep't of Revenue of the Commonwealth of Pennsylvania, 850 F.2d 165, 169-70 (3d Cir. 1988), involved a post-petition tax audit and assessment notice filed by the Pennsylvania Department of Revenue. The notice sent by the Commission in this case is easily distinguished from the notices and actions taken by governmental entities in those two cases, because the Commission is not a taxing authority and its delinquency notice was not a tax assessment.  In sum, the Commission has pointed to no cases, nor have I found any, in which a non-taxing entity's actions to collect a debt that may later be labeled and levied as a tax by a government entity is exempt from the operation of the automatic stay.


3.  11 U.S.C. § 362(b)(18)

Finally, the Commission contends that it did not violate the automatic stay because it could have created and perfected a tax lien for delinquent utility charges under 11 U.S.C. § 362(b)(18).  Section 362(b)(18) provides that the filing of a bankruptcy petition does not operate as a stay of

>the creation or perfection of a statutory lien for an ad valorem property tax, or a special tax or special assessment on real property whether or not ad valorem, imposed by a governmental unit, if such tax or assessment comes due after the date of the filing of the petition[.]

The Commission contends that it was entitled to send Grede a notice and report the

27

delinquencies because these actions constituted creation and perfection of a statutory lien for a "special tax" or "special assessment" within the meaning of § 362(b)(18).  (The Commission does not argue that Grede's unpaid utility charges qualify as ad valorem property taxes).  Grede disagrees, contending that unpaid utilities are added to the tax rolls as "special charges" and fall outside the § 362(b)(18) exception.  The bankruptcy court agreed with Grede.  In reaching this conclusion, the bankruptcy court relied on the definitions of "special tax" and "special charge" as used in Wisconsin law.  Dkt. #1152, at 8-9.

The meaning of "special tax" and "special assessment" is an issue of federal, not state law.  City of New York v. Feiring, 313 U.S. 283, 285 (1941) (definition of "tax" in Bankruptcy Code is federal issue, not dependent on particular state's use of term); see also In re Camilli, 94 F.3d 1330, 1331 (9th Cir. 1996) (same); In re LTV Steel Co., Inc., 264 B.R. 455, 476 (Bankr. N.D. Ohio 2001) (whether a tax is "ad valorem" under § 362(b)(18) is issue of federal, not state law).  Unfortunately, the Bankruptcy Code does not define either term, and there is no case law interpreting the application of § 362(b)(18) to special taxes or assessments.  However, chapter 9 of the Bankruptcy Code, which pertains to municipal bankruptcies, defines "special tax payer" as an

> owner or holder of legal or equitable title to real property against which a *special assessment* or *special tax* has been levied the proceeds of which are the sole source of payment of an obligation issued by the debtor to defray the cost of

28

an *improvement relating to such real property*.

11 U.S.C. § 902(3) (emphasis added).  This definition suggests that special taxes and special assessments are levied against particular real properties for the costs of improving those properties.  One commentator has applied a similar definition of "special tax" and "special assessment" to the § 362(b)(18) automatic stay exception, noting that these phrases were intended to encompass only "charges that relate to specific projects that a jurisdiction undertakes to benefit a particular area and that are funded in whole or in part from taxes imposed on properties in the area receiving the benefit."  Carl M. Jenks, The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005: Summary of Tax Provisions, 79 Am. Bankr. L.J. 893, 896 n. 19 (2005).

The Supreme Court's definitions of "special taxes" and "special assessments" support the same conclusion.  In Illinois Central Railroad Co. v. City of Decatur, 147 U.S. 190, 197-98 (1893), the court explained that

> special taxes or special assessments . . . are imposed upon property within a limited area for the payment for a local improvement, supposed to enhance the value of all property within that area, . . . [and] proceed upon the theory that, when a local improvement enhances the value of neighboring property, that property should pay for the improvement.

Id.  In another case, the Federal Court of Claims concluded that the City of Seattle's assessment against downtown properties for a metro bus tunnel qualified as a "special assessment" because it was a one-time charge levied against properties benefiting specifically

29

from the public tunnel.  <u>Wright Runstad Properties Ltd. Partnership v. United States</u>, 40 Fed. Cl. 820, 826 (Fed. Cl. 1998) (citing <u>Illinois Central Railroad</u>, 147 U.S. at 197).

In light of this case law, I conclude that "special assessment" and "special tax" as used in § 362(b)(18) refer to amounts levied against certain properties for public benefits that enhance certain properties in particular.  The next question is whether Grede's unpaid utility charges, and the lien sought by the Commission, meet this definition of "special assessment" or "special tax."  I conclude that they do not.  The delinquent utility charges are for services provided by the Commission to Grede, and arose only because Grede was unable to pay for the services.  They did not arise because the municipality provided a public improvement from which Grede's property received a particular benefit.  When utility customers cannot pay for the utilities they consume, the charges are collected as if they were a tax.  The Commission has cited no cases, nor have I found any, in which charges such as unpaid utility bills were exempted under § 362(b)(18) from the automatic stay.

Finally, although state law does not control the interpretation of a federal statute, Wisconsin's use of the terms "special assessment," "special tax" and "special charge" is instructive.  The bankruptcy court concluded that, "under Wisconsin law, the Commission's unpaid bills constitute a 'special charge,' not a 'special tax.'" Dkt. #1152, at 8.  I agree.

Wisconsin law distinguishes among a "special tax," a "special assessment" and a "special charge."  Wis. Stat. § 74.01(5) defines a "special tax" as "any amount entered in the

30

tax roll which is *not* a general property tax, special assessment or special charge." (Emphasis added). Wis. Stat. § 74.01(4) defines a "special charge" as "an amount entered in the tax roll as a charge against real property to compensate for all or part of the costs to a public body of *providing services* to the property." (Emphasis added). Utility charges are "costs to a public body of providing services to the property," and thus fit squarely within the definition of a "special charge." Also, on at least two occasions, Wisconsin courts have classified unpaid utility charges as a "special charge." Davis v. City of Elkhorn, 1990 WL 42605, *3 (Wis. Ct. App. 1990) (unpublished) (delinquent utility charges were special charge); Laskaris v. City of Wisconsin Dells, 131 Wis. 2d 525, 532, 389 N.W.2d 67, 70 (Wis. Ct. App. 1986) (delinquent electric bills owed to municipal utility were special charge).

In sum, the Commission has pointed to no federal or state law or persuasive authority suggesting that delinquent utility bills constitute a "special assessment" or "special tax" within the meaning of § 362(b)(18). Thus, keeping in mind that statutory exceptions to the automatic stay are to be interpreted narrowly in order to give the stay a broad effect, In re Parr Meadows, 880 F.2d at 1547, In re Harris, 310 B.R. 395, 397-98 (Bankr. E.D. Wis. 2004) ("exceptions [to the stay] are to be narrowly construed . . .") (quoting Robert E. Ginsberg & Robert D. Martin, Ginsberg & Martin on Bankruptcy § 3.02[A] (2000)), I conclude that the Commission's notices of delinquency are not excepted from the automatic

stay by § 362(b)(18).

ORDER

IT IS ORDERED that the decision of the United States Bankruptcy Court for the Western District of Wisconsin holding that appellant Reedsburg Utility Commission violated the 11 U.S.C. § 362 automatic stay is AFFIRMED.

Entered this 24th day of May, 2010.

BY THE COURT:

/s/

BARBARA B. CRABB
District Judge